UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

Plaintiff,

v.

CANTRELL FUNERAL HOME INC., ET AL.,

Defendants.

_____/

Case No. 19-cv-11192

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [47]; AND MOTION FOR DEFAULT JUDGMENT [48]

### I. INTRODUCTION

On April 25, 2019, Plaintiff Allstate Insurance Company ("Plaintiff") filed the instant civil action against Defendants Cantrell Funeral Home, Inc.; Rec-Mac, Inc.; Raymond E. Cantrell II; Annetta Cantrell; Raymond E. Cantrell Revocable Trust Dated 5/15/84; and Jameca LaJoyce Boone (collectively, "Defendants"). *See* ECF No. 1. Several other Intervenor-Defendants joined this action, but they have since been dismissed with prejudice in a Stipulated Order for Dismissal. ECF No. 46. Plaintiffs seek a declaratory judgment that it is not required to provide coverage to or indemnify Defendants under the terms of their insurance agreement.

Presently before the Court is Plaintiff's Motion for Summary Judgment as to Defendant Annetta Cantrell, which was filed on September 8, 2020. ECF No. 47.

1

Plaintiff's Motion for Default Judgment as to the remaining Defendants, which was filed on the same day, is also before the Court. ECF No. 48. A hearing on Plaintiff's Motions was held on December 11, 2020. Plaintiff was the only party in attendance for this hearing.[1] For the reasons that follow, the Court will **GRANT** Plaintiff's Motion for Summary Judgment [#47] and Motion for Default Judgment [#48].

## II. BACKGROUND

Plaintiff's action stems from eight lawsuits before the Wayne County Circuit Court and the administrative proceedings brought by the State of Michigan Department of Licensing and Regulatory Affairs, Securities and Commercial Licensing Bureau. These lawsuits arise out of the alleged misconduct by Defendants Cantrell Funeral Home, Inc. or their directors, employees, or agents related to the funeral, burial, and/or disposition for the several claimants' decedents discovered in 2018. ECF No. 1, PageID.3. They seek to impose liability on Defendants for the alleged intentional, improper handling, and storage of human remains discovered in 2018 that the underlying plaintiffs believed had been previously buried or cremated. ECF No.48, PageID.758. Plaintiff provided commercial insurance coverage— including general liability coverage, special Funeral Director's Liability coverage,

---

[1] Each party was notified of this hearing date on September 9, 2020 and again on December 9, 2020. ECF Nos. 49, 50, 51. The Court also entered an Order Regarding Status Conference on August 24, 2020 to alert the parties of deadlines for dispositive motions. As previously noted by the Court, Plaintiff was the only party in attendance at the status conference. ECF No. 45, PageID.502.

and commercial umbrella/excess liability coverage—to Defendant Cantrell Funeral Homes, Inc. from October 1, 1998 to February 1, 2016.  ECF No. 48, PageID.752.

Plaintiff has taken the position that there is no coverage available to Defendants under its insurance agreement insurance policies because the claims asserted in the underling lawsuits do not meet the requirements of the insuring agreements; the claims arise out of conduct for which coverage is specifically excluded under the policies; and the claims arose outside of the applicable policy period.  *Id.* at PageID.759–60.  On April 25, 2019, Plaintiff commenced this action against Defendants.  ECF No. 1.  Excluding Defendant Annetta Cantrell, ECF No. 24, Defendants failed to file an answer or otherwise defend this matter in accordance with Federal Rule of Civil Procedure 12.  On June 19, 2019, the parties entered a Stipulated Order allowing seven Intervening-Defendants to join this case.  ECF No. 23.

On October 28, 2019, Plaintiff filed a request for the Clerk's Entry of Default against each Defendant excluding Defendant Annetta Cantrell.  ECF Nos. 37, 38. The Clerk entered a Default as to each Defendant except Defendant Jameca LaJoyce Boone the following day.  ECF Nos. 39, 40.  On August 21, 2020, Plaintiff filed a Notice of Voluntary Dismissal as to Defendant Jameca LaJoyce Boone.  ECF No. 44.  The Court conducted a Status Conference in this matter three days later, where Plaintiff's counsel indicated that she was in contact with counsel for Intervenor-

Defendants regarding their recently filed Stipulated Order for Dismissal as to the seven Intervenor-Defendants.  ECF No. 45, PageID.502.  The Stipulated Order for Dismissal as to the seven Intervenor-Defendants was submitted that same day.  ECF No. 46.

Plaintiff timely filed a Motion for Summary Judgment against Defendant Annetta Cantrell, as well as a Motion for Default Judgment as to the remaining Defendants in this matter, on September 8, 2020.  ECF Nos. 47, 48.  The Court did not receive a Response brief for either motion.  The Court will provide more factual background as to each present Motion in its analysis below.

### III. LAW & ANALYSIS

#### A. Plaintiff's Motion for Summary Judgment (ECF No. 47)

##### 1. Factual Background

The several underlying state court and administrative proceedings stem from the discovery of human remains hidden throughout the Cantrell Funeral Home in 2018.  ECF No. 47, PageID.514.  First, on November 16, 2018, Jenelle M. Barber and Randy Holley filed suit in the Wayne County Circuit Court against the Cantrell Funeral Home, Inc., VHS Harper-Hutzel Hospital, Inc., Raymond E. Cantrell II, Annetta Cantrell, and the Raymond E. Cantrell Revocable Trust Dated 5/15/84, As Amended (hereinafter, "Barber Complaint").  ECF No. 47-3.  The Barber Complaint alleges, in relevant part, that decedent Baby Holley died on April 14, 2009 and,

4

despite making arrangements with Cantrell Funeral Home for a burial, the plaintiffs learned in 2018 that the decedent's body was discovered in the funeral home's ceiling crawl space. *Id.* at PageID.724.

Second, on January 23, 2019, Erika and Christopher Hinson filed suit against Ascension St. John Hospital, Cantrell Funeral Home, Inc., Raymond E. Cantrell II, and Annetta Cantrell (hereinafter, "Hinson Complaint"). ECF No. 47-4. The Hinson Complaint alleges, in relevant part, that the decedent passed away on January 30, 2014 and Defendant Annetta Cantrell took possession of his body on behalf of Cantrell Funeral Home beginning April 14, 2014 until it was eventually found in an unrefrigerated tupperware container on April 25, 2018. *Id.* at PageID.729–30.

Third, on January 24, 2019, Whitney Morris and AJ Johnson filed suit against VHS Harper-Hutzel Hospital, Inc., Cantrell Funeral Home, Inc., Raymond E. Cantrell, II, and Annetta Cantrell (hereinafter, "Morris/Johnson Complaint"). ECF No. 47-5. The Morris/Johnson Complaint alleges, in relevant part, that the decedent passed away on September 14, 2011 and, despite arrange for a burial, the decedent's body was found hidden in the Cantrell Funeral Home on or about October 24, 2018. *Id.* at PageID.737–38.

The plaintiffs in the Barber, Hinson, and Morris/Johnson Complaints each seek recovery for extreme emotional distress in amounts in excess of ten million dollars from defendants, including Defendant Annetta Cantrell. ECF No. 47,

PageID.516–17.   Defendant Annetta Cantrell tendered the Barber, Hinson, and Morris/Johnson complaints to Plaintiff for defense and/or indemnity under the applicable insurance policies.   *Id.*

Fourth, after discovery of human remains in the Cantrell Funeral Home in 2018, the State of Michigan initiated a series of formal administrative complaints against Cantrell Funeral Home, Inc. (hereinafter, "Administrative Complaints"). ECF No. 1-12.   The Administrative Complaints include allegations regarding the improper handling and disposition of human remains, as well as the those concerning that to date, approximately 200 unclaimed cremated remains were recovered in the funeral home.   *Id.* at PageID.338, 340.   At the time of this writing, Plaintiff has not received a request for defense or indemnity from Defendant Annetta Cantrell for these Administrative Complaints.   ECF No. 47, PageID.518.

 Plaintiff provided commercial insurance coverage including general liability ("CGL") coverage, special Funeral Director's Liability coverage, and Commercial Umbrella/excess liability coverage to its insured Cantrell Funeral Home, Inc. from October 1, 1998 to February 1, 2016, with the policy for each renewal period identical in both content and coverages.   *Id.* at PageID.518–19.   Plaintiff provides the policy language, including relevant exclusions, for each coverage in its Motion. *Id.* at PageID.519–523.

6

Plaintiff now moves for and requests the Court to grant summary judgment in its favor and issue the following Declaratory Judgment: (1) that the exclusions and coverage provisions contained in the Allstate Commercial and General Liability Policy No. 048-777-304, and Commercial Umbrella coverage Policy No. 048-777-289, including the special Funeral Director's Liability coverage form, do not provide coverage or require that Plaintiff indemnify Defendant Annetta Cantrell, individually or as a representative/agent of Cantrell Funeral Home, for the liability asserted against her in state court litigation and administrate proceedings commenced by the State of Michigan concerning the improper handling and disposition of human remains discovered in the Cantrell Funeral Home in 2018; and (2) that since Plaintiff owes no coverage for the liability asserted against Defendant Annetta Cantrell, it is relieved from providing a defense in a suit tendered to Plaintiff on behalf of Defendant Annetta Cantrell alleging that Defendant improperly handled and disposed of human remains at the Cantrell Funeral Home, and accordingly, Plaintiff is not obligated to pay attorney's fees, costs, and/or expenses, including payment of any judgment or settlement, in connection with any of the litigation or administrative proceedings commenced by the State of Michigan. ECF No. 47, PageID.507. As indicated *supra*, Defendant Annetta Cantrell did not file a Response to Plaintiff's present Motion. Indeed, the Court takes notice that Defendant Annetta

Cantrell has not filed anything in the present matter since her Answer in June 2019. *See* ECF No. 24.

### 2. Legal Standard

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### 3. Analysis

Plaintiff argues that it has no duty to defend or indemnify Defendant Annetta Cantrell against the allegations in the underlying lawsuits based on (1) Defendant Annetta Cantrell's alleged conduct occurred as a result of intentional acts and violations of Michigan law which do not qualify as an "occurrence" as defined by

the policies, and otherwise fall within the applicable policy exclusions; and (2) the plaintiffs in the underlying state court lawsuits did not become aware of the mishandling of the decedents' remains until 2018, after termination of Plaintiff's policy period effective February 1, 2016. *Id.* at PageID.514–15. The Court shall address each argument in turn.

### a. Applicable Law

Michigan courts interpret insurance contracts "in accordance with Michigan's well-established principles of contract construction." *Henderson v. State Farm Fire and Cas. Co.,* 596 N.W.2d 190 (Mich. 1999) (citation omitted). This requires insurance contracts to be enforced according to their terms, and courts should not create an ambiguity when the policy is clear and precise. *Id.* (citations omitted). Any terms used in an insurance policy which are not clearly defined should be given their commonly used meaning. *Group Ins. Co. of Mich. v. Czopek*, 489 N.W.2d 444, 447 (Mich. 1992) (citation omitted). Exclusions limiting the scope of coverage are to be read with the insuring agreement and independent of other exclusions. *See State Farm Mut. Auto. Ins. Co. v. Roe*, 573 N.W.2d 628, 631 (Mich. Ct. App. 1997). As a general rule, exclusionary clauses are to be strictly construed against the insurer. *Id.* (citation omitted).

The burden of showing a claim is not covered under a policy belongs to the insurer. *Fresard v. Mich. Millers Mut. Ins. Co.*, 327 N.W.2d 286, 289 (Mich. 1982).

The Supreme Court of Michigan has set forth a two-part analysis to determine whether an insured is entitled to insurance benefits:

> First, we determine if the policy provides coverage to the insured. If it does, we then ascertain whether that coverage is negated by an exclusion. *Buczkowski v. Allstate Ins. Co.,* 447 Mich. 669, 682, 526 N.W.2d 589 (1994). It is the insured's burden to establish that his claim falls within the terms of the policy. *Arco Industries Corp. v. American Motorists Ins. Co.,* 448 Mich. 395, 531 N.W.2d 168 (1995). *Harvey Oil Co. v. Federated Mut. Ins. Co.,* 837 F. Supp. 242, 244 (W.D. Mich., 1993).

*Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 510 (Mich. 1995) (internal quotation marks omitted). Moreover, the Supreme Court of Michigan has explained that policy exclusions rely on a presumption that the insured has established that the policy provides coverage. *Id.* If the policy in question does not provide coverage to the insured, then the court does not need to examine any policy exclusions or exceptions to exclusions. *Id.*

### b. CGL and Umbrella Policies and the Policy Exclusions

Plaintiff first argues that its CGL and Umbrella policies do not provide coverage for claims that Defendant Annetta Cantrell improperly handled and/or concealed human remains. ECF No. 47, PageID.526. Plaintiff asserts that the actions alleged in the claims do not qualify as an "occurrence" as defined by its policy. *Id.* Moreover, Plaintiff maintains that the violations of law and criminal acts in the underlying lawsuits fall within the policy exclusions. *Id.*

As explained above, Plaintiff provided commercial insurance coverage, including CGL coverage, special Funeral Director's Liability coverage, and Commercial Umbrella/excess liability coverage to its insured Cantrell Funeral Home Inc. between October 1, 1998 to February 1, 2016. ECF No. 47, PageID.527. The policies in place during this period were identical in form, content, and coverages during each policy renewal period. *Id.* The purchase of these policies by Cantrell Funeral Home, Inc. created a binding contract between Plaintiff and Defendants, where Plaintiff agreed to insure Defendants and its employees against covered occurrences. *Id.* Plaintiff's coverage was subject to specified terms, conditions, exclusions, and endorsements contained within the insuring agreements. *Id.*

The CGL policy, including the Funeral Director's Liability Coverage Form, provides that Plaintiff would pay those sums that Cantrell Funeral Home, Inc. became legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" during the policy periods. *See* ECF No. 1-2. "Bodily injury" is defined as bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. *Id.*; *see also* ECF No. 47, PageID.520. "Occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *Id.*

The CGL policy includes a provision setting forth exclusions for liability:

### 2. Exclusions

This insurance does not apply to:

c.  Expected or Intended injury.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not appl to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*Id.*  Moreover, the CGL policy specifically excludes liability coverage for any occurrence in connection with which the insured, within its own knowledge, had violated any law or ordinance or committed any criminal act.  ECF No. 47, PageID.528.

The Umbrella policy provides that Plaintiff will pay the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which the insurance applies.  ECF No. 1-3; *see also* ECF No. 47, PageID.522.  This policy applies to "bodily injury" and "property damage" only if the bodily injury or property damage is caused by an "occurrence" during the policy period.  *Id.*  Like the CGL policy, the Umbrella policy specifically excludes liability coverage for bodily injury and property damage expected or intended from the standpoint of the insured.  ECF No. 1-3; *see also* ECF No. 47, PageID.523.

In its Motion, Plaintiff asserts that the coverage available under the aforementioned policies "only extend[] to conduct considered 'accidental' and falling within the policy definition of an 'occurrence,' while specifically excluding coverage for intentional or criminal conduct."  ECF No. 47, PageID.529.  The

Court's determination of coverage is based on whether the underlying complaint(s) allege a theory of recovery that falls within the insurance policy. *Reed v. Netherlands Ins. Co.*, 860 F. Supp. 2d 407, 412 (E.D. Mich. 2012) (citation omitted). Indeed, "[t]he Insurer's duty to defend is determined by the allegations in the complaint." *Id.* The Michigan Court of Appeals has explained that "[t]here is no duty to defend or provide coverage where the complaint is a transparent attempt to trigger insurance coverage by characterizing allegations of tortious conduct under the guise of 'negligent' activities." *Auto Club Grp. Ins. Co. v. Burchell*, 642 N.W.2d 406, 414 (Mich. Ct. App. 2001) (citations omitted); *see also State Mut. Ins. Co. v. Russell*, 462 N.W.2d 785, 788 (Mich. Ct. App. 1990).

Here, the Court must therefore apply the terms of the insurance policies to Defendant Annetta Cantrell's alleged conduct, and the resulting claims of emotional distress set forth in the underlying lawsuits. The alleged conduct in these lawsuits involve the concealment of bodies in the Cantrell Funeral Home when the decedent's families otherwise believed that such bodies had been buried or cremated. The Court finds that allegations concerning the active concealment of remains in a ceiling, as set forth in the Barber and Morris Complaints, and a tupperware container, as set forth in the Hinson Complaint, cannot be considered "accidental" as defined in the parties' insurance agreement. Specifically, the alleged conduct included the following statutory and criminal violations:

- Making false statements on vital records, a misdemeanor pursuant to MCL 333.2898. (ECF No. 1-11, PageID.343–44).

- Failing or refusing to properly supervise the final disposition of a dead human body, a misdemeanor punishable by imprisonment for not more than 90 days pursuant to MCL 750.160c. (ECF No. 1-11,PageID.345).

- Engaging in fraud, deceit, and dishonesty in the practice of mortuary science, contrary to MCL 339.604(b). (ECF No. 1-11, PageID.347).

Moreover, the Court reiterates that the insurance agreement specifically excludes coverage for violations of law and criminal acts. The Court thus concludes that Defendant Annetta Cantrell's alleged conduct does not fall within the definition of "occurrence" under the insurance policies.

Accordingly, the Court finds that Plaintiff has no obligation to indemnify or defend Defendant Annetta Cantrell in the underlying state court actions or Administrative Complaints.

### d. Policy Period

Plaintiff also argues that it does not have an obligation to indemnify or defend Defendant Annetta Cantrell under the applicable insurance policies because the plaintiffs in the underlying state court lawsuits did not become aware of the alleged mishandling of the decedents' remains until 2018, after the termination of Plaintiff's policy period of February 1, 2016. ECF No. 47, PageID.530. Plaintiff cites to *Reed v. Netherlands Ins. Co.*, 860 F. Supp. 2d 407 (E.D. Mich. 2012) for the proposition

that coverage is triggered under an occurrence policy only when a claimant discovers that a decedent's remains have been mishandled.  *Id.*  The Court agrees with Plaintiff that the district court's analysis in *Reed* is applicable to the present matter.

In *Reed*, the court granted summary judgment in favor of defendant Netherlands Insurance Company after determining that plaintiffs' emotional distress claims did not accrue until after the applicable insurance policy period expired. Specifically, plaintiffs' claim of mental anguish did not accrue until August 11, 2009, the date they discovered their mother's body had allegedly been misplaced by the insured cemetery.  *Id.* at 415.  This discovery was well outside the policy coverage dates.  Indeed, the applicable insurance policy was effective between December 22, 2006 and November 25, 2007.  *Id.* 410.  In its analysis, the court emphasized that defendant Netherlands Insurance Company's policy was an "occurrence" policy, and it therefore provided coverage only for losses that occur within the policy period.  *Id.* at 414.  The court concluded that because plaintiffs discovered the alleged error with their mother's body outside of the policy period, they could not have experienced any resulting emotional distress until after expiration of that policy period.  *Id.* at 413–14.

Here, the Court takes notice that in all of the underlying lawsuits filed against Defendant Annetta Cantrell in state court, the claimants seek damages for their alleged emotional distress that occurred as a result of the discovery of human

remains in the Cantrell Funeral Home in 2018.  To reiterate, Plaintiff's policy was effective from October 1, 1998 to February 1, 2016.  In her Answer to the instant Complaint, Defendant Annetta Cantrell admitted that the policy periods terminated February 1, 2016.  ECF No. 24, PageID.407.  There is therefore no genuine issue of material fact that the policy periods terminated on February 1, 2016.  Accordingly, the alleged damages for emotional distress in the underlying lawsuits did not ripen until 2018, well outside the policy coverage dates.  The Court therefore agrees with Plaintiff that no coverage exists for claimed emotional distress occurring outside of the policy period.

In sum, Plaintiff has no duty to defend or indemnify Defendant Annetta Cantrell against the allegations in the underlying lawsuits.  The Court will therefore grant Plaintiff's present Motion for Summary Judgment, and its requested relief, as to Defendant Annetta Cantrell.

**B. Plaintiff's Motion for Default Judgment (ECF No. 48)**

**1. Factual Background**

Several lawsuits in the Wayne County Circuit Court against Defendants, as well as administrative proceedings by the State of Michigan Department of Licensing and Regulatory Affairs, resulted from state investigators' discovery of human remains in the Cantrell Funeral Home in 2018.  Based on the allegations in the lawsuits and administrative proceedings, Plaintiff has maintained that there is no

coverage available to Defendants under the insurance policies because (1) the claims asserted therein do not meet the requirements of the insuring agreements; (2) the claims arise out of conduct for which coverage is specifically excluded under the policies; and (3) the claims arose outside of the applicable period. ECF No. 48, PageID.759–60. The Court will briefly address each lawsuit in the Wayne County Circuit Court and administrative proceeding below.

As explained *supra*, on November 16, 2018, Jenelle M. Barber and Randy Holley filed suit against the Cantrell Funeral Home, Inc., VHS Harper-Hutzel Hospital, Inc., Raymond E. Cantrell II, Annetta Cantrell, and the Raymond E. Cantrell Revocable Trust Dated 5/15/84, As Amended. ECF No. 1-4. The Barber Complaint alleges, in relevant part, that decedent Baby Holley died on April 14, 2009 and, despite making arrangements with Cantrell Funeral Home for a burial, the plaintiffs learned in 2018 that the decedent's body was discovered in the funeral home's ceiling crawl space. *Id.* at PageID.231.

Also explained *supra*, on January 23, 2019, Erika and Christopher Hinson filed suit against Ascension St. John Hospital, Cantrell Funeral Home, Inc., Raymond E. Cantrell II, and Annetta Cantrell. ECF No. 1-5. The Hinson Complaint alleges, in relevant part, that the decedent passed away on January 30, 2014 and Defendant Annetta Cantrell took possession of his body on behalf of Cantrell

Funeral Home beginning April 14, 2014 until it was eventually found in an unrefrigerated tupperware container on April 25, 2018. *Id.* at PageID.241.

On November 13, 2018, Sharna Bates filed suit against Defendants seeking recovery for emotional trauma associated with the disposition of her child's remains (hereinafter, "Bates Complaint"). ECF No. 1-6. The Bates Complaint alleges, in relevant part, that the decedent passed away on October 23, 2015 and Defendants took possession of her body beginning October 24, 2015 until it was eventually found stuffed in a ceiling in October 2018. *Id.* at PageID.247.

On January 24, 2019, Whitney Morris and AJ Johnson filed suit against VHS Harper-Hutzel Hospital, Inc., Cantrell Funeral Home, Inc., Raymond E. Cantrell, II, and Annetta Cantrell. ECF No. 1-7. The Morris/Johnson Complaint alleges, in relevant part, that decedent passed away on September 14, 2011 and, despite arrange for a burial, the decedent's body was found hidden in the Cantrell Funeral Home on or about October 24, 2018. *Id.* at PageID.257–58.

On January 29, 2019, Arnestra Brewer filed suit against Defendants seeking recovery for extreme emotional distress associated with the disposition of decedent Leila V. Brewer's remains (hereinafter, "Brewer Complaint."). ECF No. 1-8. The Brewer Complaint alleges, in relevant part, that Defendants failed to properly preserve and care for the decedent's body and allowed it to be stored in an unrefrigerated garage for months. *Id.* at PageID.264.

On February 4, 2019, Michael Brown filed suit against Defendants seeking recovery for extreme emotional distress associated with the disposition of decedent Dominique Brown's remains (hereinafter, "Brown Complaint."). ECF No. 1-9. The Brown Complaint alleges, in relevant part, that Defendants failed to properly preserve and care for the decedent's body and allowed it to be stored in an unrefrigerated garage for months. *Id.* at PageID.268.

On October 16, 2018, Katherleen Bonner filed suit against Defendants seeking recovery for economic and non-economic damages, including mental anguish, associated with the handling of her late husband's remains (hereinafter, "Bonner Complaint."). ECF No. 1-10. The Bonner Complaint alleges, in relevant part, that subsequent to taking possession of the decedent's body, Defendant Cantrell failed to perform funeral services and ultimately performed a cremation on or about April 16, 2018. *Id.* at PageID.274. Upon information and belief, however, the alleged cremated remains were not in fact the decedent's remains, but instead some other unknown substance. *Id.*

On June 8, 2018, Tamika Jordan, Shandanique Jordan, and Tanisha Jordan filed suit against Defendants seeking recovery for emotional distress associated with the disposition of decedent Marcia Jordan's remains (hereinafter, "Jordan Complaint."). ECF No. 1-11. The Jordan Complaint alleges, in relevant part, that

Defendants failed to properly preserve and care for the decedent's body, which was later found in an unrefrigerated garage for months.  *Id.* at PageID.285.

After the discovery of human remains in the Cantrell Funeral Home in 2018, the State of Michigan Department of Licensing and Regulatory Affairs, Corporations, Securities & Commercial Licensing Bureau, initiated a series of formal administrative complaints against Cantrell Funeral home, Inc.  ECF No. 48, PageID.758.   Specifically, the complaints alleged violations of the Michigan Occupational Code, MCL 339.1801, *et seq.*, and the Prepaid Funeral and Cemetery Sales Act, MCL 328.211, *et seq.*  *Id.*  The administrative complains also included allegations regarding the improper handling and disposition of human remains.  *Id.* at PageID.759.

Defendants Cantrell Funeral Home, Inc., Rec-Mac, Inc., f/k/a Cantrell Funeral Home, Inc., Raymond E. Cantrell, II, and Raymond E. Cantrell Revocable Trust Dated 5/15/84, As Amended (hereinafter, "Defendants") were served with the summons and Complaint in the present matter in April and May 2019.  ECF Nos. 10, 11, 12, 14.   They failed to plead or otherwise defend against Plaintiff's Complaint.   Accordingly, the Clerk's Entry of Default for each Defendant was entered on June 3, 2019 (as to Cantrell Funeral Home, Inc., Rec-Mac, Inc., f/k/a Cantrell Funeral Home, Inc., and Raymond E. Cantrell, II) and on October 29, 2019

(as to Raymond E. Cantrell Revocable Trust Dated 5/15/84, As Amended).  ECF Nos. 18, 19, 20, 39.

Plaintiff now moves for an entry of default judgment in its favor against each of the aforementioned Defendants.  ECF No. 48.  Plaintiff seeks a ruling that it has no obligation to either (a) participate in the defense on behalf of Defendants in the underlying lawsuits and State of Michigan administrative proceedings, including the payment of any attorney's fees, costs, and/or expenses in connection with the lawsuits; and (b) indemnify Defendants for any of the underlying state court cases or State of Michigan administrative proceedings.  *Id.* at PageID.760.

### 2.  Legal Standards

#### a.  Motion for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs entry of judgment by default.  In order to obtain judgment by default, the proponent must first request the Clerk's entry of default pursuant to Rule 55(a).  Once a default has been entered by the Clerk, the plaintiff's well-pleaded allegations are deemed admitted.  *See, e.g.*, *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); *State Farm Fire and Casualty Company v. Piron*, No. 11-11375, 2011 WL 3625048, at *1 (E.D. Mich. July 28, 2011).  The plaintiff may then file for default judgment by the Clerk or by the court. FED. R. CIV. P. 55(b).

When the plaintiff's complaint alleges damages for a sum certain, the Clerk "on plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing…." FED. R. CIV. P. 55(b)(1).  "In all other cases, the party must apply to the court for a default judgment."  FED. R. CIV. P. 55(b)(2).  A default judgment may be entered without a hearing unless it is necessary to determine the amount of monetary damages.  *Id.*  The court must exercise "sound judicial discretion" when determining whether to enter the default judgment.  10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2685 (3d ed. 1988); *see also Applebaum v. Target Corporation*, No. 11-cv-15035, 2015 WL 13050014, at *1 (E.D. Mich. Sept. 10, 2015); *Piron*, 2013 WL 1843965, at *2.

### b.  The Declaratory Judgment Act

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.  It does not provide an independent basis for jurisdiction. Rather, it provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists.  *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d

466, 470 (6th Cir. 2003).  In the present matter, the jurisdiction of the Court to hear

Plaintiff's declaratory judgment action arises out of diversity jurisdiction pursuant

to 28 U.S.C. § 1332.  *See* ECF No. 11, PageID.252.

While the Declaratory Judgment Act provides this Court with jurisdiction, the

Supreme Court of the United States has explained that a district court is "under no

compulsion to exercise that jurisdiction."  *Brillhart v. Excess Ins. Co. of Am.*, 316

U.S. 491, 494 (1942).  In the Sixth Circuit, courts consider five factors in deciding

whether a case is appropriate for declaratory judgment:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir.

1984).

### 3.  Analysis

The instant matter arises under the Declaratory Judgment Act.  A clerk's entry

of default is not a guarantee that a court's entry of default judgment is going to follow

in a suit arising under the Declaratory Judgment Act.  *See, e.g.*, *Auto-Owners*

*Insurance Co. v. Davidson*, No. 1:17-CV-83, 2017 WL 5035085, at *3 (E.D. Tenn.

Nov. 1, 2017).  In federal actions under the Declaratory Judgment Act, any potential

risk of "interference with the orderly and comprehensive disposition of a state court litigation" should be avoided.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942).  The Court will first address Plaintiff's argument as to the scope of coverage.  The Court will then analyze whether it is appropriate to exercise jurisdiction over this matter under the Declaratory Judgment Act.

### a.  Plaintiff's Insurance Coverage

In its Motion, Plaintiff argues that "[t]he question in declaratory actions such as this one, brought to determine the scope of coverage, is whether there is a theory of liability on which the tort claimant can prevail, and as to which there is coverage." ECF No. 48, PageID.760–61.  Plaintiff asserts that "coverage determination depends on an examination of the substance of the complaint, the conduct of the insured, and the basis of the claimant's injuries."  *Id.* at PageID.761.  It argues that its insurance coverage to Defendants "only extends to conduct considered 'accidental' and falling within the policy definition of an 'occurrence,' while specifically excluding coverage for the Defendants' intentional or criminal conduct."  *Id.* at PageID.763. Further, its coverage only applies to damages which occurred within the specific policy periods: October 1, 1998 to February 1, 2016.  *Id.*

Plaintiff argues that it does not owe a duty to defend or indemnify the Defendants in the underlying state court litigation and administrative proceedings

initiated by the State of Michigan for two reasons.  First, Defendants' conduct occurred as a result of their purportedly intentional acts, including a violation of Michigan law that does not qualify as an "occurrence" as defined by Plaintiff's insurance policies, and otherwise falls within the applicable policy exclusions.  *Id.* Second, the plaintiffs in the underlying state court lawsuits did not become aware of Defendants' mishandling of the decedents' remains until 2018—two years after the policy period concluded.  *Id.*

The Court incorporates its discussion of the applicable law for insurance contracts in Michigan to its present analysis.  As explained *supra*, exclusions in an insurance policy should generally be construed strictly in favor of the insured.  *See Allstate Ins. Co. v. Saph*, No. 13-13112, 2014 WL 3900607, at *3 (E.D. Mich. Aug. 11, 2014).  "Clear and specific exclusions," however, must be given effect to avoid holding an insurance company liable for a risk it did not assume.  *Id.* (citing *McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co.*, 559 N.W.2d 93 (Mich. App. 1996)).

Here, Plaintiff cites to *Reed v. Netherlands Ins. Co.*, 860 F.Supp.2d 407, 414 (E.D. Mich. Feb. 16, 2012), to support its argument that its insurance policies do not cover the alleged damages in the underlying state court lawsuits.  Plaintiff emphasizes that the purported emotional distress damages in these cases "did not accrue until after termination of the policy period."  ECF No. 48, PageID.765–66. In *Reed*, the court explained that "[e]motional distress claims generally do not ripen

until the plaintiff suffers the emotional distress.  Under the circumstances of this case, a plaintiff's claim for mental anguish would not accrue until the plaintiff is actually aware that human remains were mishandled."  *Reed*, 860 F.Supp.2d at 413 (internal citations omitted).

Additionally, the court in *Reed* explained that the insurance policy at issue was an "occurrence" policy.  *Id.* at 414.  In such a policy, there can be no coverage for an event which doesn't occur during the policy period.  *See Frankenmuth Mutual Ins. Co., Inc. v. Eurich*, 394 N.W.2d 70 (Mich. Ct. App. 1986) (finding that a general liability insurer had no duty to defend because the occurrence fell outside the policy period); *Employers Mutual Liability Ins. Co. of Wisconsin v. Michigan Mutual Auto Ins. Co.*, 300 N.W.2d 682 (Mich. Ct. App. 1980) (holding that when the negligent act occurs during the policy period but the damages do not occur until after the policy has been cancelled, the insurance policy does not cover the accident).

In the instant matter, the plaintiffs in the underlying state court lawsuits similarly discovered that their decedents' remains were mistreated—conduct which allegedly gave rise to their independent emotional distress claims—in 2018, well after Plaintiff's provided insurance coverage was terminated on February 1, 2016. ECF No. 48, PageID.766.  Moreover, in the Brewery, Brown, Bonner, and Jonner Complaints, the improper handling of the decedents' remains did not occur until

after expiration of the policy period on February 1, 2016. *Id.* The decedents in each of these cases passed away after October 2017. *Id.*

Further, the insurance coverage at issue in the present matter, like the one at issue in *Reed*, was an "occurrence" policy. The CGL policy provides that Plaintiff would pay the sums which Defendant became legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" to which the insurance applied to during the policy periods. ECF No. 1, PageID.8–11. "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at PageID.10. Both the CGL and the Umbrella policies exclude liability coverage for bodily injury or property damage expected or intended from the standpoint of the insured. Stated differently, Plaintiff's insurance coverage excludes coverage for Defendants' intentional or criminal conduct, which Plaintiff lists in its present Motion. *See* ECF No. 48, PageID.764–65. The Court agrees with Plaintiff that *Reed* provides persuasive authority both for the proposition that the emotional distress damages alleged in the underlying state court lawsuits did not ripen until after the termination of its policy period and that no coverage existed for the claimed bodily injuries occurring outside of the policy period.

The Court's analysis of whether to enter default judgment in the instant matter does not conclude here. The Court finds it necessary to apply the *Grand Trunk*

factors since Plaintiff's claims arise under the Declaratory Judgment Act.  The Court will do so in the next section.

### b.  Jurisdiction Under the Declaratory Judgment Act

To reiterate, the Sixth Circuit has identified five factors that the Court should consider in its determination of whether to exercise jurisdiction over a declaratory judgment action.  *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).  Applying the *Grand Trunk* factors here persuades the Court that it should exercise jurisdiction under the Declaratory Judgment Act.

As to the first *Grand Trunk* factor, which evaluates whether the declaratory action would settle the controversy, a declaratory action here will definitively determine whether or not Plaintiff owes a duty to defend and indemnify Defendants in the underlying state court litigation and administrative proceedings.  "[A] prompt declaration of policy coverage would surely 'serve a useful purpose in clarifying the legal relations at issue.'"  *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).  A grant of declaratory relief would "settle the scope of insurance coverage" under Plaintiff's policies in the underling state court litigation and administrative proceedings.  *See Liberty Mut. Fire Ins. Co. v. Salmo*, No. 09-13482, 2010 WL 2740170, at *3 (E.D. Mich. July 12, 2010).  Accordingly, this factor weighs in favor of this Court's exercise of jurisdiction.

28

The first and second *Grand Trunk* factors are closely related.  *Salmo*, 2010 WL 2740170, at *3.  The second factor evaluates whether a declaratory action would serve a useful purpose in clarifying legal relations at issue.  *Grand Trunk*, 746 F.2d at 326.  The Sixth Circuit has explained that "[w]hile the parties may have other tortious or contractual relationships to clarify in state court, [the] concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer."  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008).

Here, the declaratory action will conclusively determine Plaintiff's duty to Defendants in the underlying state court lawsuits and administrative proceedings. The Court's ruling will not impair or confuse the state court's analysis of the coverage issues because Plaintiff is not a party to these proceedings.  ECF No. 48, PageID.767–68.  Additionally, the Court denotes that Plaintiff previously stipulated to allow the state court claimants to intervene in this action.  ECF No. 23.  Plaintiff subsequently agreed to a Stipulated Order of Dismissal of all intervening Defendants after they agreed that they no longer had an interest in this action.  ECF No. 46. Accordingly, at this juncture, the state court claimants are not opposing Plaintiff's requested relief.  The Court's determination of the legal relationship between Plaintiff and Defendants, therefore, should not complicate the state court's analysis

of liability issues.  *Cf. Salmo*, 2010 WL 2740170, at \*3 (finding that the second *Grand Trunk* factor weighed against the court's exercise of jurisdiction since the named parties in the underlying state lawsuit filed motions to intervene as interested parties; the district court concluded that its decision "might confuse the state court's analysis of [the] liability issues").  The Court thus finds that the second factor weighs in favor of this Court's exercise of jurisdiction.

The third *Grand Trunk* factor evaluates whether a party's request for declaratory judgment action is motivated by "procedural fencing" or is likely to create a race for res judicata.  *Grand Trunk*, 746 F.2d at 326.  When a plaintiff files its claim after a state court litigation has begun, courts generally give that plaintiff the benefit of the doubt that no improper motive fueled the filing of the action.  *See Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004).  This factor "is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum."  *Esurance Property and Casualty Insurance Co. v. Johnson*, No. 16-cv-11880, 2017 WL 3272157, at \*3 (E.D. Mich. Apr. 20, 2017) (internal citations omitted).

Plaintiff filed the instant action in April 2019 after the filing of the eight underlying state court lawsuits between June 2018 and February 2019.  Additionally, the Court emphasizes Defendants' lack of defense; they have not attempted to

dispute Plaintiff's motive in bringing the instant action.   As Plaintiff correctly explains, Defendants "have not taken any steps in this action to oppose [Plaintiff's] requested relief."   ECF No. 48, PageID.768–69.   The Court reiterates that Defendants most recently failed to either attend the August 24, 2020 Status Conference or respond to Plaintiff's present Motion.

Further, the Sixth Circuit has explained that "[i]f [an insurer] in fact [has] no duty to indemnify its insured or to defend them in the state action, then it should not be forced to participate in the action."   *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 454 (6th Cir. 2003).   Here, the Court finds it plausible that Plaintiff's commencement of this action is for the valid purpose of avoiding forced participation in the underlying lawsuits.   *See* ECF No. 48, PageID.769 ("With allegations of wrongdoing against Defendants in multiple forums, Plaintiff properly commenced this action to seek an adjudication of its coverage obligations as to these Defendants[.]").   A declaratory judgment will undoubtedly clarify the relationship between Plaintiff and Defendants.   Accordingly, this third factor weighs in favor of this Court's exercise of jurisdiction.

Next, the Court must determine whether exercising jurisdiction over this case would increase friction between federal and state courts.   *See Grand Trunk*, 746 F.2d at 326.   The Supreme Court cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is

pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).  The mere existence of a state court proceeding, though, is not determinative of improper federal encroachment upon state jurisdiction. *Allstate Insurance Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987), *abrogated on other grounds by Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000).

Courts must consider three additional factors when analyzing the fourth *Grand Trunk* factor:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action."

*Scottsdale Ins. Co.*, 513 F.3d at 560.

Plaintiff argues that there is no risk of usurping the state court in light of (1) Defendants' failure to defend this action; (2) the lack of dispute concerning the applicable language in the insurance policies and coverage periods; and (3) Plaintiff not being a named party to the underlying state court lawsuits or administrative proceedings.  ECF No. 48, PageID.770.  The Court agrees with Plaintiff that while

Defendants could have filed a third-party complaint against it in the state court action, they failed to do so. *Id.* There is therefore no indication that the state court is considering the issues presented in the instant matter in any of the underlying lawsuits at this juncture.

The Court concludes that the three sub-factors each weigh in favor of the Court's exercise of jurisdiction; accordingly, the fourth *Grand Trunk* factor, in its entirety, weighs in favor of the exercise of jurisdiction.

The fifth and final *Grand Trunk* factor evaluates the availability of an alternative remedy. *See Grand Trunk*, 746 F.2d at 326. Plaintiff could seek a declaratory judgment action in state court. Mich. Ct. R. 2.605(A)(1). However, "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Scottsdale Ins. Co.*, 513 F.3d at 562.

Defendants, in choosing not to file an answer or otherwise defend this matter, do not argue that a state court declaratory judgment action would be better or more effective than a federal court declaratory judgment action. *Cf. Esurance Property and Casualty Insurance Co. v. Johnson*, No. 16-cv-11880, 2017 WL 3272157, at *5 (E.D. Mich. Apr. 20, 2017) (district court recognized the moving defendants' argument that the availability of a state court declaratory judgment action as an "other remed[y]" available to plaintiff). The Court therefore does not have a record to analyze the plausibility of another remedy in the instant matter. Even if

Defendants presented such an argument, though, the Court concludes that the alternative state court action would not necessarily present a better remedy. Accordingly, this final factor also weighs in favor of exercising jurisdiction.

In sum, each of the five factors the Court must consider weigh in favor of the exercise of jurisdiction. Accordingly, and in light of the "unique and substantial" discretion which the Declaratory Judgment Act confers on district courts, the Court will exercise its jurisdiction in granting declaratory relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). To reiterate, Defendants were served with the summons and Complaint in April and May 2019, ECF Nos. 10, 11, 12, 14, and failed to plead or otherwise defend against Plaintiff's Complaint.

The Court will therefore grant Plaintiff's present Motion for Default Judgment, and its requested relief, as to Defendants Cantrell Funeral Home, Inc., Rec-Mac, Inc., f/k/a Cantrell Funeral Home, Inc., Raymond E. Cantrell, II, and Raymond E. Cantrell Revocable Trust Dated 5/15/84, As Amended.

## IV. CONCLUSION AND ORDER

For the reasons articulated above, the Court **HEREBY ORDERS** that Plaintiff's Motion for Summary Judgment [#47] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter a judgment in favor of Allstate Insurance Company and against Defendant Annetta Cantrell:

A. That the exclusions and coverage provisions contained in the Allstate Commercial and General Liability Policy No. 048-777-304, and Commercial Umbrella coverage Policy No. 048-777-289, including special Funeral Director's Liability coverage form, do not provide coverage or require that Allstate indemnify Defendant Annetta Cantrell, individually or as a representative/agent of Cantrell Funeral Home, for the liability asserted against her in state court litigation and administrative proceedings commenced by the State of Michigan concerning the improper handling and disposition of human remains discovered in the Cantrell Funeral Home by state investigators in 2018.

B. That since Allstate owes no coverage for the liability asserted against Defendant Annetta Cantrell, it is relieved from providing a defense in any suit tendered to Allstate on behalf of Annetta Cantrell, and accordingly, Allstate is not obligated to pay attorney's fees, costs, and/or expenses, including payment of any judgment or settlement, in connection with any of the litigation or administrative proceedings commenced by the State of Michigan concerning the improper handling and disposition of human remains discovered in the Cantrell Funeral Home by state investigators in 2018.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment [#48] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter a declaratory judgment in favor of Plaintiff Allstate Insurance Company and against Defendants Cantrell Funeral Home, Inc., Rec-Mac, Inc., f/k/a Cantrell Funeral Home, Inc., Raymond E. Cantrell, II, and Raymond E. Cantrell Revocable Trust Dated 5/15/84, As Amended:

A. That Allstate has no obligation to defend or indemnify Defendants in the underlying state court litigation and administrative proceedings arising from the Defendants' alleged improper handling and disposition of human remains when the claims asserted therein do not meet the requirements of the Allstate insuring agreements;

B. That the claims arose out of conduct for which coverage is specifically excluded under the Allstate policies; and

C. The claims accrued outside of the applicable Allstate policy periods

**IT IS SO ORDERED.**

Dated:        December 11, 2020

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 11, 2020, by electronic and/or ordinary mail.

<u>/s/ Teresa McGovern</u>
Case Manager